UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                          )
                                )
DeCoro USA, Limited,            )      Case No. 09-10846C-11G
                                )
            Debtor.             )

<u>MEMORANDUM OPINION</u>

This case came before the court on December 6, 2011, for hearing on the Debtor's motion for summary judgment (Docket Item 419) in which the Debtor seeks a judgment sustaining the Debtor's objection to the claim of the Internal Revenue Service ("IRS") and disallowing such claim. At the conclusion of the hearing, the court granted requests by the parties that they be allowed to file additional briefs in support of their respective positions. The additional briefs have been filed and have been reviewed by the court. After reviewing the motion, the submissions, and the briefs submitted by the parties and considering the arguments of counsel, the court concluded that the motion should be denied and entered an order denying the motion (Docket Item 448). This memorandum opinion sets forth the reasons for the denial of the motion.

A.  Pre-petition Developments

During the years 2004-2007, substantial sales of furniture were made to customers located in the United States involving furniture manufactured in China and shipped to the United States by DeCoro Limited, a Hong Kong limited liability company. The Debtor is a North Carolina corporation and is a wholly owned subsidiary of

DeCoro Limited ("Ltd").  The furniture sales to customers in the United States were procured by the Debtor through either employees of the Debtor or independent sales representatives engaged by the Debtor.

During 2008 or early 2009, the IRS began an examination regarding the United States tax liability of Ltd and the Debtor. The primary question during the examination was which company should pay the income tax due from the furniture sales to customers located in the United States, which depended upon which company should be regarded as the seller of the furniture.  If the Debtor were a dependent agent of Ltd, then the sales would be treated as having been made by Ltd and Ltd would be taxed as a foreign corporation making sales in the United States.  This was the primary position of the IRS during the pre-petition audit. Conversely, if the Debtor were an independent distributor, then the sales would be treated as having been made by the Debtor and the Debtor would be liable for any income taxes due as a result of the domestic sales.  This was the position of the Debtor during the audit.

In February of 2009, the IRS issued an audit letter saying that income taxes would be assessed against Ltd based upon the furniture sales to customers in the United States.  However, prior to any assessment being made by the IRS, Ltd filed an insolvency proceeding in Hong Kong and the Debtor filed for bankruptcy relief

in this court.  No further action was taken by the IRS prior to filing its proofs of claim in this case.

B.  The Claim Filed by the IRS

The IRS filed its original proof of claim on June 8, 2009, and thereafter amended the claim twice.  The second amendment was filed on October 28, 2010, in the amount of $13,011,260.56.  The amended proof of claim has a one-page attachment describing the year and the nature and amount of the taxes included in the claim.  The attachment reflects that the years involved are 2004-2008 and that the kinds of taxes are "CORP-INC" and "FOREIGN" taxes for 2004-2008.

The following additional description of the basis for the IRS claim is contained in a response filed by the IRS (Docket Item 240) after the Debtor objected to its claim:

> The income tax liability asserted against the debtor is based on the Service's adjustments to the debtor's income under 26 U.S.C. § 482.  This Section allows the Service to make allocations among members of a controlled group of taxpayers where a controlled taxpayer has not reported its true taxable income.  Treas. Reg. § 1.482-1(a)(2).  Such allocations may include allocations of income, deductions, credits, allowances, basis or any other item affecting taxable income.  Id.  The standard to be used in determining the true taxable income of a taxpayer is that of a taxpayer dealing at arms length with an uncontrolled taxpayer.  Treas. Reg. § 1.482-1(b)(1).
>
> Here, the debtor's true taxable income was much higher than what it reported.  This is because its actual mark-up rate, 3.32%, was well below the mark-up rate of independent distributors.  As a result of this low mark-up rate, the debtor has consistently reported low net operating profits, less than one-half of one percent,

since its inception.

With respect to the foreign tax, 26 U.S.C. § 881 imposes a 30% tax on the amount a foreign corporation received from sources within the United States as interest, dividends, rents, salaries, and wages. It is not imposed with respect to any amounts that are not effectively connected with a trade or business. This liability is collected by withholding at the source of the income. 26 U.S.C. §§ 1441, 1442.(fn)  This tax may be applicable where, as here, an allocation under 26 U.S.C. § 482 is made. <u>Central De Gas De Chihuahua, S.A. v. Commissioner</u>, 102 T.C. 515 (1994).

Here, the parent corporation is deemed to have received a dividend from the debtor.  <u>Brittingham v. Commissioner</u>, 66 T.C. 373 (1976).  As a result, the parent corporation became liable for the foreign tax imposed by 26 U.S.C. § 881.  And the debtor had an obligation under 26 U.S.C. § 1442 to withhold this tax. By failing to withhold such tax the debtor became liable for this tax as well.

**fn:** If the parent company were to concede that it should have filed corporate income tax Forms 1120F for each of the tax years at issue, because its profits were effectively connected with the conduct of a trade or business within the United States, the debtor would not be liable for any withholding requirement.  To date, the parent company has not made such a concession.  As stated above, the parent corporation is represented by the same counsel as the debtor.

The background for the income tax part of the above explanation (involving the section 482 part of the claim) includes a Distribution Agreement ("DA") between the Debtor and Ltd.  Under the DA, the purported arrangement was one in which the furniture that it sold to customers in the United States was "purchased" from Ltd. In doing so, the Debtor "paid" Ltd essentially the same amounts that it charged the customers as the sales price of the furniture.  The DA provides for a "commission" to be paid to the

Debtor computed by taking ten percent of a portion of the expenses for which the Debtor was being reimbursed by Ltd.  The "mark-up rate" referred to in the above-quoted explanation apparently is a percentage figure computed by treating the amount of the commission as the Debtor's profit on the furniture sales and determining what percentage of sales that "profit" was.  It is implicit, if not explicit, that this part of the IRS objection is premised upon treating the Debtor as the party that was making the sales rather than Ltd (i.e., treating the Debtor as an independent distributor), which is the opposite of what the IRS had contended during the pre-petition examination and audit.  In computing the income tax portion of its claim, the IRS apparently determined what an "arms-length" mark-up rate would be and used that figure in arriving at the income tax liability of the Debtor based on the furniture sales that were made in the United States during the years in question.

The "Foreign" part of the claim, as explained above, is based upon section 881 of the Internal Revenue Code ("IRC").  The re-allocation resulted in a determination that Ltd, in effect, received a dividend apparently related to the difference between an arms-length mark-up and the actual mark-up.  Under section 881, a foreign taxpayer can be taxed thirty percent of dividends that are effectively connected with a trade or business in the United States.  Because the Debtor failed to withhold and remit the thirty percent tax, the IRS included the thirty percent amount as part of

the tax liability of the Debtor.

C.  The Debtor's Objection to the IRS Claim

Objections to the original and amended proofs of claim were filed by the Debtor (Docket Items 189 and 205).  The Debtor's objections to the IRS claims state the ground of objection as follows: "The Debtor further submits that to the extent that the IRS maintains any tax claim, such claim should be asserted against De Coro Limited ("Ltd.") and not the Debtor."  The Debtor's theory is that the furniture sales in the United States should be treated as having been made by Ltd and therefore Ltd, not the Debtor, is the party liable for any income taxes due with respect to the domestic furniture sales.

The Debtor's objection implicates several provisions of the IRC. Under section 882(a)(1) of the IRC a foreign corporation engaged in a trade or business within the United States may be taxed "on its taxable income which is effectively connected with the conduct of a trade or business within the United States." There are two requirements in order for section 882(a)(1) to be applicable.  First, the foreign corporation must be engaged in trade or business within the United States and second, the income that can be taxed must be taxable income that is "effectively connected" with such trade or business.

The first requirement under section 882(a)(1) has two components: (i) the foreign corporation must be engaged in a trade

or business; and (ii) such trade or business must be conducted within the United States. There is little, if any, disagreement regarding whether Ltd was engaged in the conduct of a trade or business since it is undisputed that Ltd continuously and regularly conducted a wide scale, international business involving the manufacture and sale of large quantities of furniture over a period of several years, including the tax years in question.[1] There is, however, a sharp disagreement regarding whether Ltd engaged in such

---

[1]For there to be a trade or business, the activities of a foreign corporation must be "considerable, continuous, and regular" in order to constitute a trade or business. A trade or business is not passive or sporadic. Lewellyn v. Pittsburg, B&L.E.R. Co., 222 F. 177, 185-6 (3d Cir. 1915). As the Third Circuit has explained,

> [T]he expression 'engaged in business' means the same thing as 'carrying on business,' and the latter expression has the same meaning as 'doing business.' The three expressions, either separately or connectedly, convey the idea of progression, continuity, or sustained activity. 'Engaged in business' means occupied in business; employed in business. 'Carrying on business' does not mean the performance of a single disconnected business act. It means conducting, prosecuting, and continuing business by performing progressively all the acts normally incident thereto, and likewise the expression 'doing business,' when employed as descriptive of an occupation, conveys the idea of business being done, not from time to time, but all the time.

Lewellyn, 222 F. at 185-6; see also Pinchot v. Comm'r, 113 F.2d 718, 719 (2d Cir. 1940); de Amodio v. Comm'r, 34 T.C. 894, 906 (1960), aff'd, 299 F.2d 623 (3d Cir. 1962); Interworld, Inc. v. Comm'r, T.C. Memo 1996-301 (1996).

trade or business within the United States.  The Debtor relies upon agency attribution in arguing that Ltd was engaged in business in the United States, asserting that the nature of the relationship between the Debtor and Ltd should be determined from the conduct of the parties and not just from recitations contained in the DA. According to the Debtor's objection, the Debtor, in actuality, was acting as an agent of Ltd in selling furniture in the United States and through the attribution of such business activities to Ltd, Ltd was engaged in business in the United States.  The IRS disputes this contention, arguing that the Debtor acted as an independent distributor and not as an agent of Ltd.

There also is disagreement regarding the second requirement of section 881(a)(1) under which income must be "effectively connected" with the conduct of a trade or business within the United States in order to be taxable.  The resolution of this disagreement requires consideration of section 864(c) of the IRC which contains definitions for use in determining when taxable income is "effectively connected with the conduct of a trade or business within the United States."

Section 864(c)(1)(A) states the general rule for foreign corporations which are engaged in business in the United States, while section 864(c)(1)(B) states the general rule for foreign corporations not engaged in business within the United States. Since the Debtor's objection apparently is grounded on the

contention that Ltd was engaged in business in the United States, the provision implicated here is section 864(c)(1)(A), which provides:

> In the case of a nonresident alien individual or a foreign corporation engaged in trade or business within the United States during the taxable year, the rules set forth in paragraphs (2), (3), (4), (6), and (7) shall apply in determining the income, gain, or loss which shall be treated as effectively connected with the conduct of a trade or business within the United States.

The Debtor argues alternatively that the applicable rule is found either in paragraph (3) or paragraph (4) of section 864(c), apparently depending upon whether the income is determined to be from a source within the United States (in which case paragraph (3) would be applicable) or from a source without the United States (in which case paragraph (4) would be applicable).  This alternative approach by the Debtor apparently is intended to make the objection applicable whether Ltd is deemed to have made the sales in China when the furniture was shipped (without the United States) or in the United States when the furniture arrived in this country (within the United States).

Section 864(c)(3) is entitled "Other income from sources within United States" (emphasis supplied) and provides:

> All income, gain, or loss from sources within the United States (other than income, gain, or loss to which paragraph (2) applies) shall be treated as effectively connected with the conduct of a trade or business within the United States.

Section 864(c)(4) is entitled "Income from sources without the

- 9 -

United States" (emphasis supplied) and provides as follows in the provisions relied upon by the Debtor:

> (A) Except as provided in subparagraphs (B) and (C), no income, gain, or loss from sources without the United States shall be treated as effectively connected with the conduct of a trade or business within the United States. (B) Income, gain, or loss from sources without the United States shall be treated as effectively connected with the conduct of a trade or business within the United States by a nonresident alien individual or a foreign corporation if such person has an office or other fixed place of business within the United States to which such income, gain, or loss . . . (iii) is derived from the sale or exchange (outside the United States) through such office or other fixed place of business of personal property described in section 1221(a)(1)[2], except that this clause shall not apply if the property is sold or exchanged for use, consumption, or disposition outside the United States and an office or other fixed place of business of the taxpayer in a foreign country participated materially in such sale.

In arguing that one of these provisions is applicable in this case, the Debtor again relies upon the contention that the Debtor was an agent of Ltd and was not an independent distributor. According to the Debtor, this means that for purposes of subparagraph (3) the furniture sales by the Debtor were made by an agent of Ltd and hence must be treated as sales made by Ltd. As to subparagraph (4), the Debtor argues that the fact that Debtor was an agent of Ltd and as such had an office in the United States means that Ltd, as principal, should therefore be regarded as

---

[2]The type of property described in section 1221(a)(1) is "stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year."

having an office in the United States to which the income from the furniture sales is attributable.[3]

The key to determining which of the foregoing provisions is applicable is to ascertain the source of the income at issue, *i.e.*, whether the source of the income is within or without the United States. An important provision in making this determination is section 861 which enumerates various categories of income that "shall" be treated as being income from sources within the United States. Section 861(a)(6) provides as follows:

> (a) Gross income from sources within the United States.—The following items of gross income shall be treated as income from sources within the United States:
>
> *          *          *
>
> (6) Sale or exchange of inventory property.—Gains, profits, and income derived from the purchase of inventory property (within the meaning of section 865(i)(1)[4]) without the United States (other than within a possession of the United States) and its sale or exchange within the United States.

Under section 861(a)(6) "income derived from the purchase of

_____

[3]This argument depends upon the applicability of section 864(c)(5) which is entitled "Rules for application of paragraph (4)(B)." Section 864(c)(5) provides, *inter alia*, that for purposes of section 864(c)(4)(B), an office of an agent shall be disregarded unless such agent has the authority to negotiate and conclude contracts in the name of the foreign corporation and regularly exercises that authority or has a stock of merchandise from which the agent regularly fills orders on behalf of the foreign corporation.

[4]Section 865(i)(1) provides: "The term 'inventory property' means personal property described in paragraph (1) of section 1221(a)."

- 11 -

inventory property . . . without the United States . . . and its sale or exchange within the United States" is treated as income from sources within the United States. Whether this provision is applicable in the present case depends upon whether the furniture sales at issue involved "inventory property" and, if so, whether the inventory was purchased "without" the United States and sold "within" the United States. While there appears to be no question about the DeCoro furniture being inventory property, there apparently is no agreement regarding by whom, and when, and where the purchase and sale of the furniture took place for tax purposes.

D.  Applicable Standard for Summary Judgment Motion

The briefs filed by the parties discuss at some length who has the burden of proof when an objection is filed to a tax claim filed by the IRS. The arguments and cases cited by the parties deal with the burden of proof at an evidentiary hearing involving an objection to a proof of claim. That is not the situation now before the court. The matter before the court is a motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7056 of Federal Rules of Bankruptcy Procedure. Accordingly, the burden that each party bears must be determined under Rule 56.

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

- 12 -

of law." FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056; <u>Celotex</u> <u>Corp v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2546, 2548 (1986). In considering a motion for summary judgment, the court must construe the "facts and inferences drawn therefrom in the light most favorable to the nonmoving party." <u>Seabulk Offshore, Ltd. v. Am.</u> <u>Home Assur. Co.</u>, 377 F.3d 408, 418 (4th Cir. 2004) (citing <u>Spriggs</u> <u>v. Diamond Auto Glass</u>, 242 F.3d 179, 183 (4th Cir. 2001). The party moving for summary judgment has the initial burden of proving the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. <u>Celotex</u>, 477 U.S. at 323. Once the moving party has met its initial burden of proof, the non-moving party must then set forth specific facts sufficient to raise a genuine issue for trial. <u>Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio</u> <u>Corp.</u>, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986). In determining whether to grant summary judgment, the court's role does not include weighing the evidence or making findings of fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 447 U.S. 242, 249-50, 106 S.Ct. 2505, 2510 (1986). The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id</u>. at 251-52. Since the Debtor is seeking summary judgment on its objection to the IRS claim, it follows that the Debtor has the burden of establishing the applicability of the

objection if the Debtor is to prevail on its motion.  See Ray Comm., v. Clear Channel Comm., Inc., ___ F.3d ___, 2012 WL 745545,*3 C.A. 4 (N.C.) March 8, 2012 (No. 11-1050)("Where, as here, the movant seeks summary judgment on an affirmative defense, it must conclusively establish all essential elements of that defense.").

E.    Analysis of the Objection

The IRS claim does not involve the IRS "creating" income for the Debtor in its proof of claim as asserted by the Debtor. Underlying the IRS claim are the tax returns filed by the Debtor for the tax years in question, i.e., 2004-2007.  In those returns, the Debtor claimed the furniture sales as having been made by the Debtor and computed the Debtor's taxable income based on those sales being the Debtor's sales.  The IRS's adjustment to the Debtor's income tax returns pursuant to section 482 and the resulting deficiency claimed by the IRS does not purport to change the source or amount of the sales as reported by the Debtor in its tax returns.  Instead, the allocation and adjustment made by the IRS involves increasing the profit margin shown in the Debtor's tax returns.  The Debtor's objection does not focus on the propriety of this adjustment nor the amount of the adjustment.  The Debtor's objection instead involves the Debtor "shifting gears" (something the Debtor accuses the IRS of doing) to now maintain that the furniture sales were made by Ltd and not the Debtor.  In order to make such a showing, the Debtor must present evidence sufficient to show that the furniture sales

- 14 -

should be treated as having been made by Ltd. Under the theory adopted in the objection, this means that the evidence must show that the Debtor was acting as the agent of Ltd in obtaining the furniture sales and that the income from such furniture sales is taxable income that is effectively connected with such sales.

It has been observed that "[s]ome of the most difficult questions as to what constitutes a U.S. trade or business arise when a foreign corporation uses the services of another person in the United States in order to conduct business, thereby raising the specter of agency attribution." Steven R. Lainoff, Stephen Bates, and Chris Bowers, Attributing the Activities of Corporate Agents under U.S. Tax Law: A Fresh Look from an Old Perspective, GA. L. REV. 143, 162-63 (2003). Part of the difficulty is that there is nothing in section 864 or section 882 of the IRC that addresses when it is appropriate to attribute the activities of one corporation to another corporation for purposes of those provisions. Id. Most courts which have considered the issue have concluded that in determining whether a nonresident has engaged in a trade or business in the United States for tax purposes, the activities of an agent of the nonresident in the United States will be attributed to the nonresident and treated the same as if the nonresident had performed such activities. See InverWorld v. Comm'r, 71 T.C.M. (CCH) 3231 (1996); De Amodio v. Comm'r, 34 T.C. 894 (1960), aff'd, 299 F.2d 623 (1963); Handfield v. Comm'r, 23 T.C. 633 (1955); Lewenhaupt, 20

T.C. 151; <u>Pinchot</u>, 113 F.2d 718.  <u>See also</u> <u>State Police Ass'n of</u>
<u>Mass. v. Comm'r</u>, 125 F.3d 1 (1st Cir. 1997)(activities of agent
attributed to a domestic corporation and treated as business
conducted by the domestic corporation for tax purposes).  <u>But cf.</u>
<u>De Portanova v. U.S.</u>, 109 F.2d 169, 171 (Ct. Cl. 1982)(activities
of independent contractor not attributable); <u>Est. of Cadwallader v.</u>
<u>Comm'r</u>, 13 T.C. 214, 216 (1949)(same).

It is less clear from the cases exactly when an entity will be
found to be an agent of the nonresident such that the activities of
the entity will be attributed to the nonresident for tax purposes.
In several of the decisions agency was admitted or the court simply
did not describe the basis for the finding of agency.  <u>See e.g.</u>
<u>DeAmodio</u>, 34 T.C. at 894; <u>Handfield</u>, 23 T.C. at 633.  Some criteria
for determining whether agency exists have emerged from other
decisions, however.  The factors that have been considered include:
(1) a contract between the parties which may be express or implied;
(2) the power of the agent to bind its principal; (3) the existence
of a fiduciary relationship between the parties; and (4) the right
of the principal to control the conduct of the agent with respect
to matters entrusted to the agent.  <u>Esmond Mills v. Comm'r</u>, 132 F.2d
753, 755 (1st Cir. 1943).  In <u>State Police Ass'n</u>, 125 F.3d at 7, the
court found that the nature of the relationship between the
contracting parties in that case depended on a "myriad of factors,
including control over the manner and means of performing the work,

the skill required, the method of payment, the duration of the relationship, and similar factors."   See also RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006)("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to so act.").

   In analyzing whether agency relationship exists, no single factor is dispositive.  State Police Ass'n, 125 F.3d at 7. Nor is the label which contracting parties place on their relationship decisive of their status vis-a-vis third parties.  Id.  Instead, the status of the parties depends upon the "substance of the contracting parties' relationship."  Id.  Finally, "[w]hether a relationship is one of agency is a legal conclusion made after an assessment of the facts of the relationship and the application of the law of agency to those facts."  RESTATEMENT (THIRD) OF AGENCY § 1.02, comment a (2006).

   Assessment of the facts in this matter involves review and consideration of the evidence that was submitted by the Debtor in support of the motion.  Such evidence includes copies of various documents, including the DA, invoices used by the Debtor when furniture sales were made, the IRS examination reports and related documents, voluminous correspondence that was exchanged between the Debtor and Ltd and various other business documents, an affidavit

from the Liquidating Plan Trustee, and some deposition testimony. In making an assessment of this evidence, the court is not called upon to weigh the evidence and make findings of fact but, instead, must construe the facts and the inferences to be drawn from the facts in the light most favorable to the IRS, the nonmoving party.

Turning to the evidence, the DA was prominent in both parties' presentations.  This agreement dates back to 2002 and apparently was in effect during the tax years in question.  The DA establishes that there was a contractual relationship between the parties that was assented to by both parties, which satisfies one of the requisites for a finding of agency.  Both parties cite the DA as supporting their position and it is true that each of the parties can cite provisions from the DA that seem favorable to their respective positions.

In arguing that the DA shows that the Debtor was an independent distributor and not an agent, the IRS points out that the Debtor is described as a "distributor" in the DA and that the DA specifically provides that the Debtor and Ltd are "independent parties" and that "neither party will either have nor represent itself to have any authority to bind the other party or act on its behalf."  However, as previously noted, the manner in which the parties characterize or label their relationship is not dispositive. E.g., State Police Ass'n v. Comm., 125 F.3d at 7; Pistone v. Superior Ct., 279 Cal. Rptr. 173, 177 (Cal. App. 1991); N & G Constr., Inc. v. Lindley, 384

N.E.2d 704, 706 (Ohio 1978). Thus, the descriptive language in the DA does not preclude a finding of agency. Instead, consideration must be given to the entire agreement and to the actual conduct of the parties in conducting business, including their dealings with customers as well as between themselves. In short, the totality of the circumstances should be considered.

The Debtor takes a different view of the DA. The Debtor points out that under the DA the price that the Debtor was required to pay to Ltd was essentially the same as the price at which the Debtor sold the furniture, which precluded the Debtor from realizing any profit from the sale of the furniture; that all shipping costs, custom duties, insurance related to the sale and delivery of the furniture was to be paid by Ltd; and that the Debtor did not bear any risk loss as to bad debts or non-saleability of any furniture. The Debtor argues that under the DA it thus did not stand to make a profit or suffer a loss from the sale of the furniture and that such a result is indicative of a dependent agent rather that an independent distributor of a product. While this is one interpretation that could be given to the DA, it alone is not a sufficient basis for the court to conclude as a matter of law that the Debtor was an agent of Ltd and that the Debtor's motion for summary judgment therefore should be granted. Again, the totality of the circumstances should be considered, notably how the parties conducted business and dealt with third parties and each other.

The additional requisites for a finding of agency include whether the Debtor had the power to bind Ltd, the existence of a fiduciary relationship between the parties and whether Ltd controlled the Debtor with respect to the business activities of the Debtor.   The Debtor's evidence was insufficient to establish the existence of any of these factors.

The Debtor's reliance upon the audit reports issued by the IRS (Exhibits B and C to Docket Item 421) is misplaced.  While such IRS documents may be competent to show the basis for a deficiency determination by the IRS, they may not be used as proof of the facts recited in the IRS documents.  See Series "A" Trust v. Helvering, 126 F.2d 530, 532 (D.C. Cir. 1942); Haag v. Comm., 88 T.C. No. 32, 88 T.C. 604 (1987); Blundon v. Comm., 32 B.T.A. 285, 1935 WL 167 (1935).  The IRS documents thus are not competent evidence regarding how the parties interacted and conducted business and hence are not competent evidence of whether the Debtor had the power to bind Ltd, whether Ltd controlled the Debtor or whether there was a fiduciary relationship.

The evidentiary impact of the affidavit of the Debtor's Liquidation Trustee also is very limited.  In the first place, this witness has no personal knowledge regarding the activities of the Debtor during 2004 through 2007 or the relationship between the Debtor and Ltd during that period.  The affiant's involvement with the Debtor began after the commencement of this chapter 11 case in

- 20 -

2009, which was after the Debtor had ceased to conduct business. The affidavit reflects that the affiant has become familiar with the business records of the Debtor and much of the affidavit involves the affiant referring to various business records and stating conclusions apparently drawn from having reviewed the records. Without more of a foundation than is provided in the affidavit, the weight and probative value of such conclusions, if admissible, are severely limited.  Such testimony by a lay witness regarding documents that do not require expert opinion in order to be understood adds little beyond the contents of the documents themselves.

As to the documents referred to in the affidavit, some of the documents are favorable to the Debtor in that one inference that could be drawn from the documents is that Ltd, acting though its president, exercised a considerable degree of control over the Debtor.  However, as noted, in considering these documents, the court is required to view the documents and the inferences to be drawn from the documents in the light most favorable to the IRS. Given this prescription for evaluating the evidence, together with the limited scope of the evidence, the court is satisfied that the Debtor has failed to establish that it was the agent of Ltd with respect to the furniture sales at issue.  This means that the Debtor's motion for summary judgment must be denied.  Given the Debtor's failure to establish agency, the court need not address the

transfer of title and other details that may be relevant in determining whether the applicable provision in this case is section 864(c)(3) or section 864(c)(4).

This 12th day of April, 2012.

WILLIAM L. STOCKS
United States Bankruptcy Judge