UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

In re:                          )
                                )
DECORO USA, LTD.                )      Case No. 09-10846C-11G
                                )
        Debtor.                 )
                                )

## MEMORANDUM OPINION

This case came before the court on February 26, 2013 for hearing on jurisdictional issues raised by the IRS regarding a Motion for Determination of Tax Refund Claims and Turnover (the "Motion") that was filed by DeCoro USA, Ltd. (the "Debtor"). Stephen M. Packman and Christine L. Myatt appeared on behalf of the Debtor and Lawrence P. Blaskopf appeared on behalf of the Internal Revenue Service (the "IRS").

## MATTER BEFORE THE COURT

The Debtor asserts in the Motion that it is entitled to a refund in the aggregate amount of $560,167.77 from losses incurred during the 2008 tax year. The Debtor requests that the court enter an order pursuant to 11 U.S.C. § 505(a) determining that a tax refund is due, and ordering the IRS to turn over the $560,167.77 refund pursuant to 11 U.S.C. § 542(b). The IRS contends in its response that the court does not have jurisdiction to order such relief because the Debtor did not "properly request" the refund, as required by 11 U.S.C. § 505(a)(2)(B)(i). The IRS further argues that the Debtor's Motion is procedurally defective because it should have been brought as an adversary proceeding.

FACTS

On February 5, 2010, the Debtor submitted a Form 1139 to the IRS pursuant to 26 U.S.C. § 6411.  The Form 1139 is an official IRS form and is entitled "Corporation Application for Tentative Refund."  In its Form 1139, the Debtor sought a tentative carryback adjustment for losses incurred during tax year 2008 and refunds for the 2003-07 tax years resulting from the requested carryback adjustment.  On April 8, 2010, in response to an IRS request that the Debtor correct and resubmit the Form 1139, the Debtor filed a revised Form 1139, addressing and correcting the computational error that had been identified by the IRS and requesting the same relief sought in the original Form 1139.

In the Motion, the Debtor claims that the IRS processed and approved the Form 1139 Application for Tentative Refund and reflected the requested tax refunds on the Debtor's transcripts of accounts as allowed and credited to the Debtor's account. According to the Debtor, the IRS's acceptance and approval of its Form 1139 Claim for Tentative Refund was further verified by telephone communications between Revenue Agent Anita Allis and Michael DuFrayne, the Liquidating Plan Trustee under the Debtor's reorganization plan.  The Debtor asserts also that on September 6, 2011, the IRS issued a Form 4549-A informing the Debtor that the IRS had accepted the Form 1139 as filed and stating that the "service center has processed this Form 1139 but the refund has

been frozen due to the Bankruptcy proceedings."[1]   The Debtor had not received the refund requested in the Form 1139 when the Motion was filed on January 10, 2013.

DISCUSSION

The authority of the bankruptcy court to make determinations regarding tax liability is found in section 505(a)(1) of the Bankruptcy Code.   Subject to the limitations contained in section 505(a)(2), bankruptcy courts are granted the authority to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."

One of the limitations on the authority granted under section 505(a)(1) is contained in section 505(a)(2)(B) which provides that "[t]he court may not so determine . . . any right of the estate to a tax refund, before the earlier of (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or (ii) a determination by such

---

[1]There currently is pending in this court a contested matter involving proofs of claim filed by the IRS in this case asserting that the Debtor owes additional taxes of $11,177,940 based in part upon the contention that the Debtor under reported its income in the income tax returns that the Debtor filed for the same tax years involved in the Debtor's Form 1139 application for a tentative carryover adjustment.   While the objections to the IRS claim have been scheduled for hearing, the issues raised by the objections remain unresolved at this time.

governmental unit of such request . . . ."  The IRS argues that under section 505(a)(2)(B), the bankruptcy court cannot make a determination regarding a tax refund until after the trustee or debtor has properly requested the refund from the IRS.  According to the IRS, the Debtor has never properly requested the refund sought in the Motion because the filing of a Form 1139 does not constitute a claim for a refund and hence the refund sought in the Motion has not been properly requested by the Debtor.  This means, according to the IRS, that the court cannot make a determination regarding such refund.

Most of the decisions involving section 505(b)(2)(B) have concluded that whether a debtor or trustee has properly requested a refund depends upon whether the refund has been contested or requested in accordance with the procedures of the taxing authority.  A leading case is <u>City of Perth Amboy v. Custom Distrib. Serv., Inc. (In re Custom Distrib. Serv., Inc.)</u>, 224 F.3d 235, 243-44 (3d Cir. 2000), where, after a thorough review of the legislative history of section 505 and the existing case law, the court held that the bankruptcy court did not have jurisdiction to order the City to refund excess payments where debtor had not contested the taxes in accordance with the applicable state tax statutes.  <u>In</u> <u>accord</u> <u>In re Constable Terminal Corp.</u>, 222 B.R. 734, 740 (Bankr. D.N.J. 1998); <u>In re Peking Trust</u>, 196 B.R. 389, 396 (Bankr. E.D. Tenn. 1996); <u>In re EUA Power Corp.</u>, 184 B.R. 631, 636

(Bankr. D.N.H. 1995); In re St. John's Nursing Home, Inc., 154 B.R. 117, 120 (Bankr. D. Mass. 1993), aff'd, 169 B.R. 795 (D. Mass. 1994). These authorities support and the court accepts the first part of the IRS's argument, to wit, that the Debtor must have properly requested the tax refund sought in the Motion in order for this court to have the jurisdiction to determine and order the payment of such refund.

The next question to be addressed is whether the Debtor has properly requested the refund sought in the Motion. The starting point for this inquiry is 26 U.S.C. § 6411 since that is the statutory authority for the application for a tentative carryback adjustment filed by the Debtor. Under section 6411(a) of the Internal Revenue Code ("IRC"), a taxpayer may file an application for a tentative carryback adjustment of the tax for the prior taxable year affected by a net operating loss carryback provided in section 172(b), by a business credit carryback provided in section 39, or by a capital loss carryback provided in subsection (a)(1) or (c) of section 1212, from any taxable year. The information to be included in the application is described in IRC section 6411(a) and must include "[s]uch other information for purposes of carrying out the provisions of this section as may be required" by the regulations adopted by the IRS. The IRS does not base its objection on the contention that the Debtor has failed to comply with IRC section 6411 nor that the use of Form 1139 was not the

correct form for seeking relief under IRC section 6411.  Rather,
the IRS argues that the filing of a Form 1139 pursuant to IRC
section 6411 does not constitute a claim for a refund.  This
argument is supported by the language of IRC section 6411(a)
itself.  Section 6411(a) concludes with the following sentence:
"Except for purposes of applying section 6611(f)(4)(B)[2], an
application under this subsection shall not constitute a claim for
credit or refund."   Similar language is contained in the
regulations that were adopted by the IRS for purposes of carrying
out IRC section 6411.  Section 1.6411-1(b)(2) of the regulations,
after describing what should be contained in an application for a
tentative carryback adjustment, states:

> An application for a tentative carryback
> adjustment does not constitute a claim for
> credit or refund.  If such application is
> disallowed by the district director or a
> service center in whole or part, no suit may
> be maintained in any court for the recovery of
> any tax based on such application.  The filing
> of an application for a tentative carryback
> adjustment will not constitute the filing of a
> claim for credit or refund within the meaning
> of section 6511 for purposes of determining
> whether a claim for credit or refund was filed
> prior to the expiration of the applicable
> period of limitation.  The taxpayer, however,
> may file a claim for credit or refund under
> section 6402 at any time prior to the
> expiration of the applicable period of
> limitation, and may maintain a suit based on
> such claim if it is disallowed or if the

---

[2]Section 6611 deals with the manner in which interest on
refunds resulting from overpayments is to be determined and is not
implicated in this matter.

- 6 -

> district director or director of a service
> center does not act on the claim within 6
> months from the date it is filed.  Such claim
> may be filed before, simultaneously with, or
> after the filing of the application for a
> tentative carryback adjustment.

Treas. Reg. § 1.6411(b)(2)(1986).

Consistent with the language of both IRC section 6411 and the accompanying regulations, the court decisions involving applications under section 6411 have concluded that an application under section 6411 does not constitute a claim for refund and is insufficient to vest the courts with jurisdiction to order the payment of a refund.  E.g., Kirsh v. United States, 131 F.Supp.2d 389, 391 (S.D.N.Y. 2000), aff'd, 258 F.3d 131 (2d Cir. 2001); Rock v. United States, 279 F.Supp. 96, 98-99 (S.D.N.Y. 1968); I.C.T.T. U.S.A., Inc. v. United States, 2007 WL 512791 (S.D.N.Y. Feb. 15, 2007); Bethlehem Indus., Inc. v. United States, 1982 WL 1704 (N.D. Ill. Oct. 14, 1982); Schrader v. Internal Revenue Service, 1975 WL 516 (W.D. Ky. Jan. 17, 1975); In re New Century TRS Holdings, Inc., 386 B.R. 11, 17 (Bankr. D. Del. 2008).  Similarly, the courts have concluded that a Form 1139 application likewise is not a "claim for refund" for purposes of 26 U.S.C. § 7422(a), which prohibits any suit or proceeding against the IRS to recover a refund "until a claim for refund . . . has been duly filed with the Secretary. . . ."  See Crimson v. United States, 550 F.2d 1205, 1206 (9th Cir. 1977); Thrift-Tee, Inc. v. United States, 492 F.Supp. 530 (W.D.N.C. 1979); New Century TRS Holdings, Inc., 386

B.R. at 15-16.

As pointed out in <u>Rock v. United States</u>, IRC section 6411 affords taxpayers an opportunity to seek speedy tax relief during the period immediately following a loss year, when such relief may be most sorely needed.   279 F.Supp. at 99.   If, however, the tentative adjustment remedy fails, the taxpayer "is still left with the option to pursue a refund claim in the normal manner."   <u>Id.</u> The statutory authority for refunds based upon an overpayment of taxes by a taxpayer is found in IRC section 6402 and the "normal manner" for making a refund claim under IRC section 6402 is specified in section 301.6402 of the regulations, which states that in the "case of an overpayment of income taxes for a taxable year of a corporation for which a Form 1120 has been filed, a claim for a refund shall be made on Form 1120(X) ('Amended U.S. Corporation Income Tax Return')."   Treas. Reg. § 301.6402-3(a)(3)(1997).   More to the point, in Rev. Proc. 2017-27, the IRS has set out "the procedure to be followed to properly request a tax refund from the Service" in the context of a bankruptcy case.   This revenue procedure provides that in the case of an overpayment of income taxes for a taxable year in which a Form 1120 has been filed by a corporate debtor, "a claim for credit or refund shall be made by the trustee on Form 1120X. . . ."   As pointed out by the Debtor, the revenue procedure also states that "this revenue procedure does not apply to the filing by the trustee of an application for a

tentative carryback or refund adjustment under section 6411 of the Internal Revenue Code." The court does not read this latter language as meaning, as contended by the Debtor, that a taxpayer filing under section 6411 is excused from seeking a formal refund as a result of having filed for a tentative adjustment under section 6411. Rather, the language should be read as simply saying that the procedure outlined in Rev. Proc. 2010-31 is not the procedure to be followed if a taxpayer elects to seek a tentative carryback adjustment under section 6411.

The Debtor also cites Revenue Procedure 2009-52 in arguing that the filing of a Form 1120X is not required in order for the Debtor to be entitled to the relief sought in the Motion. Section 13 of the Worker, Homeownership, and Business Act of 2009[3] (the "Act") amended IRC sections 172(b)(1)(H) and 810(b) to allow taxpayers to elect to carry back certain net operating losses for a period of three, four, or five years to offset taxable income in those preceding taxable years. Revenue Procedure 2009-52 was adopted by the IRS to provide guidance to taxpayers regarding the new provisions added by the Act. Under IRC section 172(b)(1)(H), as amended by the Act, an election must be made by the taxpayer in order to claim the new carryback relief provided under the Act. Section 172(b)(1)(H)(iii) in turn provides that the election under section 172(b)(1)(H) is required to be made in a manner prescribed

---

[3]Pub. L. No. 111-92, 123 Stat. 2984 (November 6, 2009).

by the IRS.   The manner prescribed by the IRS for making the
section 172(b)(1)(H) election is set forth in section 4 of Revenue
Procedure 2009-52.   The provision of Revenue Procedure 2009-52
relied upon by the Debtor is contained in section 4.01(4), which
provides:

> <u>Electing on an appropriate form</u>. In lieu of
> the procedures described in section 4.01(3) of
> this revenue procedure, a taxpayer may make
> the § 172(b)(1)(H) election on an appropriate
> form under this section 4.01(4).
>
>      (a) <u>What to file</u>.
>
>           (i) A taxpayer may make the §
> 172(b)(1)(H) election by attaching an election
> statement to the appropriate form the taxpayer
> files applying the NOL carryback period the
> taxpayer elects.   The election statement must
> state that the taxpayer is electing to apply §
> 172(b)(1)(H) § 810(4) under Rev. Proc. 2009-
> 52, and that the taxpayer is not a TARP
> recipient nor, in 2008 or 2009, an affiliate
> of a TARP recipient.   The statement must
> specify the length of the NOL carryback period
> the taxpayer elects (3, 4, or 5 years).   The
> appropriate form is—
>
>           (A) for corporations, Form 1139 <u>or</u>
> Form 1120X, Amended U.S. Corporation Income
> Tax Return;

Rev. Proc. 2009-52 § 4.01(4)(a)(i)(A)(2009)(emphasis supplied).

     The Debtor asserts that the "disjunctive use of the word 'or'
in Section 4.01(4)(a)(i)(A) plainly permits the taxpayer to make
its IRC section 172(b)(1)(H) election by filing a Form 1139 <u>or</u> Form
1120X, which the Debtor did here." Reply to U.S.' Resp. in Opp'n
to Debtor's Mot., p.5. While this may be correct, it has no bearing

- 10 -

upon whether the filing of a Form 1139 will constitute a refund claim.    Section 4.01(4)(a)(i)(A) pertains only to the manner in which the section 172(b)(1)(H) election may be made.    Nothing in Rev. Proc. 2009-52 purports to alter the provision in section 6411 that an application under section 6411 does not constitute a claim for refund or the requirement under regulation section 301.6402 that in the case of an overpayment of income taxes for a taxable year of a corporation for which a Form 1120 has been filed, a claim for refund "shall" be made on Form 1120X.    In short, the use of a Form 1139 to make the election under IRC section 172(b)(1)(H) does not transform the Form 1139 into something that it is not.    Form 1139 remains an application for a tentative carryback adjustment and is no more a refund claim here than when submitted in any other context.

The Debtor also argues that the Motion should be granted because the refund process is complete as a result of the IRS having processed and approved its application for a tentative carryback adjustment and shown an abatement of taxes on the IRS transcripts for the Debtor.    This argument misinterprets the actions that have been taken by the IRS.    As pointed out by the IRS, the entry in the tax transcripts is coded as a tentative decision, which is all that the IRS could do without a claim having been presented pursuant to IRC § 1602.    See I.C.T.S. U.S.A., Inc., 2007 WL 512791, at *2 (even if the refund requested in the Form

1139 had been approved, "it in no way detracts from the continuing force of Treasury Regulation 301.6402-3(a) which states that 'a claim for a refund shall be made on Form 1120(X)'"). The Debtor's argument also ignores the distinction that must be drawn under the tax statutes and regulations between an application for tentative relief under Form 1139 and the presentation of a formal refund claim under 1120X. When processing an application for tentative adjustment, the review by the IRS called for under section 6411[4] requires that the IRS do "little more than check the math" underlying the request and "does not formally resolve the refund request as it does with a formal request under Form 1120X." I.C.T.S. U.S.A., Inc., 2007 WL 512791, at *2. "The differences between an application for a tentative carryback adjustment and a claim for a refund are not merely formal; they are substantive, and the statute and regulations as well as Form 1045[5] itself so state." Rock, 279 F.Supp. at 98-99. Hence, the fact that the Debtor has proceeded under Form 1139 and sought a tentative carryback adjustment under IRC section 6411 is a substantive matter which limits the type of relief that is now available from this court.

------------------------

[4]The review directed under section 6411(b) is that the "Secretary shall make, to the extent he deems practicable in such period, a limited examination of the application, to discover omissions and errors of computation therein. . . ."

[5]The court refers to Form 1045 because the taxpayer in Rock was an individual taxpayer and Form 1045 is the form required for an application under section 6411 where the taxpayer is other than a corporation.

The Debtor's election to proceed under section 6411 does not confer authority on this court to order the IRS to pay the tax refund referred to in the Motion because no proper request for refund has been made as required by 11 U.S.C. § 505.

Finally, the Debtor asserts the alternative position that in the event the court decides that it failed to file a proper refund request, the court should find that it filed an informal claim within the limitations period.  The IRS, while admitting that an informal notice of a tax-refund claim can be sufficient if made within the limitations period, argues that the Debtor has failed to meet the requirements of an informal notice.

As previously discussed, a corporate taxpayer normally satisfies the administrative exhaustion requirement by filing a Form 1120X amended tax return.  See Treas. Reg. § 301.6402-3(a). However, under the informal claim doctrine, "a timely filed informal claim" can satisfy section 7422(a)'s administrative exhaustion requirement.  Evans v. United States, 618 F.Supp. 621, 622-23 (E.D.Pa. 1985), aff'd, 787 F.2d 581 (3d Cir. 1987).  A narrow group of "informal" notice of tax-refund claims have been construed to provide sufficient notice within the limitations period.  E.g., Miller v. United States, 949 F.2d 708, 711 (4th Cir. 1991). An informal claim must satisfy two requirements: (1) the claim must be in writing; and (2) the writing must "fairly advis[e] the Commissioner of the nature of the taxpayer's claim."  United

States v. Kales, 314 U.S. 186, 194 (1941); Miller, 949 F.2d at 711
(notice must be "sufficient to appraise the IRS that a tax refund
is sought and to focus attention on the merits of the dispute").
The sufficiency or adequacy of an informal refund claim is largely
a question of fact.  United States v. Commercial Nat'l Bank of
Peoria, 874 F.2d 1165, 1171 (7th Cir. 1989).  When determining
whether a taxpayer has made an informal claim, courts are
instructed to "examine the writing, or series of writings, in light
of all of the existing facts and circumstances to determine whether
the IRS had sufficient notice that a taxpayer wished to assert a
right with regard to the overpayment of tax."  United States v.
Commercial Nat. Bank of Peoria, 874 F.2d 1165, 1171 (7th Cir.
1989).  As such, no set rules can be offered as to what constitutes
an adequate informal claim; rather, each case must be determined
based on its own unique set of facts.

The Debtor argues that it advised the IRS of its entitlement
to the refund claim as early as mid-2009 in its plan of
reorganization (the "Plan").  Page 3, paragraph I(A)(ii) of the
Plan states "The Debtor expects its 2008 return will reflect
substantial losses. . . . The Debtor believes it is entitled to
refunds from the IRS for prior tax years for taxes paid."  Chapter
11 Plan of Liquidation, June 19, 2009 (Docket #74).  The Plan was
served on the IRS.  Thereafter, on January 14, 2011, the Debtor
served on the IRS its First Set of Interrogatories, which asked the

IRS to "describe in detail the current status of the refund owed to the Debtor as a result of the Debtor's federal tax return for tax year ending in December 31, 2008." Debtor's First Set of Interrogs., No. 20. The IRS responded that it was "currently examining the Debtor's income tax refund claims." U.S.' Resps. to the Debtor's First Set of Interrogs., No. 20. Finally, the Debtor points to the application for tentative carry-back adjustment, and also asserts that there are numerous references to its claim for a refund of taxes in the pleadings and papers filed with this court and served on the IRS throughout the contested matter involving the Debtor's objections to the claim filed by the IRS in this case.

The court concludes that, in light of the facts and circumstances of this case, the series of writings identified by the Debtor are insufficient to constitute an informal claim for refund because the writings, considered alone or together, do not advise the IRS of the nature of the a refund claim by the Debtor. As an initial matter, it is well established that the Form 1139 filed by the Debtor cannot be an informal claim for refund. See Crismon, 550 F.2d at 1206; Kirsh, 131 F.Supp.2d at 391 ("[C]ase law firmly supports the notion that [a tentative refund application] does not provide . . . informal notice. . . ."). Acceptance of a tentative refund request as the basis of an informal claim "would obliterate the distinction between a tentative application and a formal claim for a refund." I.C.T.S. U.S.A., Inc., 2007 WL 512791,

at *2.   Furthermore, the Plan of Reorganization asserted the Debtor's right to refund based on projected losses from the 2008 tax year but did not specify for which tax years the Debtor believed it was entitled to a refund.   Accordingly, the Plan does not pin-point the area of dispute.   See Miller, 949 F.2d at 711. The interrogatories served on the IRS are similarly vague with regard to the years at issue and the nature of the dispute between the Debtor and the IRS.   Indeed, Question 20 merely inquired into the status of the Form 1139 application, rather than notifying the IRS in any way that the Debtor was seeking a separate claim for refund.   See Bethlehem Industrs. Inc., 1982 WL 1704, at *2 (concluding that a letter inquiring into the status of a Form 1139 application does not constitute an informal claim for refund). Finally, the Debtor relies on the "various pleadings and papers filed with the Bankruptcy Court throughout this contested matter" which allegedly reference a claim for a refund of taxes. Reply to U.S.' Resp. in Opp'n to Debtor's Mot., p.9. The Debtor does not identify any particular pleading or document which references the claim. The court has reviewed the voluminous record in this case and is unable to identify any reference to a refund claim by the Debtor which would have put the IRS on notice of such a claim.[6]

---

[6] The court identified only one reference to the Debtor's claim for refund in the documents and pleadings on the record. On page 6 of the Brief/Memorandum In Support of Debtor's Response to United States' Motion for Clarification of Summary Judgment Orders and Cross-Motion for Reconsideration of Order and Memorandum

Based upon the foregoing, the court concludes that the Debtor's Motion for Determination of Tax Refund and Turnover should be overruled and denied. An order so providing is being entered contemporaneously with the filing of this memorandum opinion.

This 11th day of March, 2013.

_____
WILLIAM L. STOCKS
United States Bankruptcy Judge

---

Opinion Denying Debtor's Cross-Motion for Summary Judgment (Docket # 464), the Debtor quotes the following from the transcript of the December 6, 2011 hearing: "[I]f we do go to trial, we are going to contest the 482 contention and demonstration that this debtor consistently lost money. That's why we filed a request for refund with the IRS going back five years." This statement in an insufficient basis for an informal claim because, like the interrogatories, it mere references the Form 1139 Application, which is not a claim for refund.

- 17 -

PARTIES IN INTEREST

Christine L. Myatt, Esq.
P.O. Box 3463
Greensboro, NC 27408

Stephen Packman, Esq.
Douglas Leney
1 Centennial Square
Haddonfield, NJ 08033

Jeffrey E. Oleynik, Esq.
2000 Renaissance Plaza
230 N. Elm Street
Greensboro, NC 27401

Lawrence P. Blaskopf, Esq.
U. S. Department of Justice
P.O. Box 227
Washington, D.C.  20044